Tod, J.
It seems to me that this case, if it c'an come at all within" the act of assembly, müst come within it because an engagement, under the act of congress, by a printer, to publish the laws of the. United States, is an office, or an appointment in the nature of an office: or, if the printer is not to- be ranked as an officer of the United States, yet, that he is included in the description of subordinate officer or agent, or person employed; or, lastly, though.not falling within the] precise words, yet that his case may be fairly construed to come within the spirit and intent of .the law. My opinion is, that the case does not. come within the wordsmf the act of assembly, nor within the meaning of it; that John Binns holds merely a contract under the federal government, an extensive job of work, as printer of a. newspaper, implying such trust only as is ordinarily implied in contracts for work; and that it is neither an office, nor appointment or employment in the nature of an office, incompatible with the office of alderman# under the act of assembly of 1802. The title of that act desérves- attention. “An act declaring the holding of offices, or appointments under this state, incompatible with holding or exercising offices or appointments under the United States.” ' The preamble also serves to show that offices under the federal government, not contracts, were. .intended. “Whereas"the eighth section of, the second article of the constitution of this commonwealth provides, that no person holding or exercising any office of profit or trust under the . United States, shall, at the same time, hold or exercise any office in this state which the legislature thereof shall declare incompatible with offices or appointments under the United States.”
The first section provides, “ that every person who shall hold any office, or appointment of profit or trust, under the government of *221 the. United States, whether a commissioned officer or otherwise, a subordinate officer or agent, who is or shall be employed under the legislative, executive, or judiciary departments of the United ¡States; and-also every-member of congresses hereby declared to dw'incajlable of holding or exercising,!at tha^bae time, theoffice or appointment of justice of the pea^S,' maydOTrecorder, burgess, or plderman, of any city, corporate tjpiih, or bq¡Fough, resident physician at the Lazaretto, constable, jddge, inspector, or clerk of election, under this commonwealth.”
It would appear, that in order to bring this .case of the printer of a newspaper, working for the United States government, as he would work for any other customer on contract for pay, within . the terms of this section, we must do what, I -take it, cannot well be done: we must, in effect, transpose the words, and also remove ' them from the place where they now stand, before the members of congress, and bring them in before agent, &c., so as to read — “and also every subordinate officer or agent, who is, or shall be employed under the legislative, executive, or judiciary departments of the United States.” The words “ office,” “appointment,” “trust,” and “ profit,” pervade and qualify the whole previous part- of the section. Nor can we, in my opinion, separate those qualifying terms from the words of agency and employment, without violence to the language; and the word “ who,” when it occurs the second time, seems plainly to refer to the previous description, and to every part of it. Thus, 1 understand the prohibition to be against all offices, and subordinate offices, of trust or profit, under the federal government, and against all appointments, agencies, and employments, in the nature of offices of trust or profit, under the same government, and against nothing else. True, hére are perhaps, more words used by the law makers, than may. appear to be necessary to convey this meaning. But redundant expressions will be often, -found in acts of assembly, and acts of congress; like rest, residue, and remainder in a deed, or in a will. It.was known, that by the laws and usages of the federal government, appointments, in the nature of office, were sometimes granted without the name of office, without a commission, and without the vote of the senate. All these were evidently intended to be declared incompatible; but without meddling, or intending toi meddle, with contracts, or with any agency or employment in the nature of contract, I am brought to this conclusion not only by the plain words of the section, and by the preamble of the law, in strict conformity with the title, but from the firmest persuasion, that if the legislature had meant to disable every agent whatsoever, -and 'every person employed by the federal government, including not only every contractor of every description, but every workman and day labourer, they would have said so in intelligible language. Besides, it is next to incredible that any law could intend, in prohibiting offices under the United States government, to prohibit those only of trust or profit, but in *222 prohibiting those inferior matters of agencies and employments, to forbid them,generally and totally, by leaving out all qualification of trust or profit. But the remaining sections of the act of' assembly appear, of themselves, conclusive to show, that the makers of it could have had no imagination of taking in a ease like the present. Section 2d. “ The holding of any of the aforesaid offices or appointments under this- state, is hereby declared to be incompátible with any office or appointment under the United States; and every such commission, office, or appointment so holden under the government of this state, contrary to the true intent and meaning of this act, shall be, and the same is hereby declared to be, null and void.” The third section is still more explicit. Section 3d. “ If any person, after the expiration of six months from the passage of this act, shall exercise any offices or -appointments, the exercise of which is, by this act, declared to be incompatible, every person so offending, shall, for every such offence, being thereof legally convicted in any court of record, forfeit and pay any sum not less than fifty, nor more than five hundred dollars, at the discretion of the court, &c.” In these two sections there is no mention made.of “subordinate officer,” or agent, or agency, or person employed, nor any words equivalent. Yet the third section, which contains the penalty, and the second section, declaring the incompatibility, go on to repeal the substancepf the description of the offence, and, in doing so, the words omitted must, Í think, have been left out totally, as they are, because they weré supposed to be unessential. For it seems clear, that if the mere holding of an employment, contract, or agency, unconnected with office, was meant to be prohibited in the first section,;a punishment for that offence also, as well’as for the offence of exercising an office or appointment, would have been enacted. If it is not so,, then this act of assembly is probably the only one to be found in' our statute book, in which the penalty inserted is not eo-extensive with the prohibition. Besides, in many cases there would be no penalty at all. A clerk" of an election, for. instance, who should sell goods, or make any other' contract with an officer of the federal government, or suffer himself to be employed under that government at work upon a road or canal, or in building a fort or a ship, could not be made to forfeit his office as-clerk-on conviction in a court of law, because the office has expired already, perhaps in half a day, perhaps in half an hour after its creation. And he clearly would not be liable to the pecuniary penalty in the third ■ section, agency or employment under the United States, not being named or referred to in that section.
That the words which have been so strongly relied on by the counsel — “ subordinate officer, or agent, who is, or shall be, employed under the legislative, executive, or judiciary.departments of the United States,”- cannot have the meaning contended for, will,.I think, be further evident, not only from the clauses of the constitution relative to the incompatibility of offices, but from the terms of *223 the supplement to this very act of assembly of 1802. By the constitution, “no member of congress, or person holding any office under the United States, or this state, shall exercise the office of governor.” Art. 2, sect. 5.
“ No member of congress, or .other person holding any office (except of attorney at law, and in the .miliíiá) under the United States, or this commonwealth, shall'be a member of either house during his continuance in-congress, or in office.” Article 1.- section 18.
' “ No member of congress from this state, nor any person holding or- exercising any office of trust or profit under the United- States, shall,, at the same time, hold or exercise the office of judge, secretary, treasurer, prothonotary, register of wills, recorder of deeds, sheriff, or any office in this state to which a salary is by law annexed, or any other office which future legislatures shall declare incompatible with offices or appointments under the United States.” Art. sect. 8.
Such being the terms of the constitution on which .the act of assembly of 1802 is expressly founded, containing only the words office and appointment under the United States, without mention of agencies, or employments, or any thing of the kind, the whole subject came before the legislature in.1812, in framing s supplement to this identical act of assembly of Í802. Its title is, “ A supplement to the act declaring the holding of office or appointment under this state, incompatible with" the holding or exercising of offices or appointments under the United States.” The words are, “ Be it enacted, &c., that no member of 'congress, from this state, nor any person holding or exercising any .office or appointment of trust or profit under the executive, legislative, or judiciary departments of the government of the United States, snail, at the same time,- hold, exercise or’ enjoy, the office of clerk of the Court of Quarter Sessions, clerk of the Orphans-’ Court, or deputy survey- or under this commonwealth.” Here the persons forbidden to hold the offices of clerk of the Quarter Sessions, clerk of the Orphans’ Court, or deputy surveyor, are the persons holding or exercising any office or appointment of trust or profit under the executive, legislative, or judiciary department of the governments of the United States. Nothing is said of subordinate officers; or of agents or of persons employed; and thus leaving out of the supplement those parts of the original act which have been relied on, by the counsel, to include the present case. Now, one of two consequences appears inevitable. Either the legislature of 1812, when they had the act of 1802 before them, and were forming a supplement to ^considered the words subordinate officer, or agent, who is or shall be employed under the legislative, executive, or judiciary departments of the United States, as mere surplusage, adding nothing to the force and effect of the law, or they intended the gross partiality and absurdity of permitting clerks of the Quar *224 ter Sessions, clerks of the Orphans’. Court, and deputy surveyors, officers whose whole time, unless where they keep deputies, is required to attend to the duties of their office, and whose stations are always of great trust, an.d often of great profit,-permitting them to act as agents under the United States, to hold contracts, and to be employed'by the United States; and, at the same time, to prohibit, under a penalty of five hundred dollars, any of these agencies, contracts, or employments, to be held by an alderman, of whom there are some' dozen,or fifteen in- one place, or a constable, whose office lasts but for a year, or by a judge of election, whose office lasts ho longer than a day,, .or by a burgess, holding a post of mere trouble, with scarcely any power and no pay. Indeed, if the words of the act of 1802 were doubtful, it would .be.with extreme reluctance that I should consent to introduce,' by construction and argument, such confusion into what ought to be and is a rational system, to introduce a rule against every notion of equality and common sense, reversing the whole policy of the state, as far as respects the incompatibility of offices, a rule' which would seem to guard public men from the approaches of influence and corruption, with a watchfulness not according to the magnitude of the trust and'of the danger, but with a jealousy and rigour just in proportion to the insignificance of the office; so as to permit agencies, employments, and contracts to a sheriff, while we refuse them to a constable, give to a member of assembly, ór to a judge, á liberty of traffic which we refuse to a justice of the peacé, and let a clerk of the Quarter Sessions, a clerk of,the Orphans’ Cou^t,'a county surveyor, or even the governor himself, engage. in business which we hold to be incompatible with the official duties'of a clerk of a township election,. ,
There is another matter which, in my opinion, renders the construction argued for not only incredible, but impossible. This law was made in 1802. Our legislature, at all times faithful and loyal to the Union, was, I believe, never more heartily so than in Mr. Jefferson’s day. It will require express words to convince me that an act passed then was intended to prohibit all justices of the peace and constables, all mayors, recorders, burgesses, and aldermen, and all judges, inspectors, and clerks of election, not only from holding any office or ¿ppointment of profit or trust, under the federal government, but from doing any act whatsoever, and from being employed in any possible business whatsoever under that government. If such shall be decided to be the meaning of the láw,1 every one sees that it may go very far to proscribe some very essential operations of the national government in Pennsylvania. Every justice of the peace, or alderman, who is employed, on behalf of the United States, to issue a warrant for felony committed on the' seas, robberies- or thefts upon the mail, or any other crime 'against the United States, will come directly in the capacity of agent, or as a person employed, under the penalty of the act. Every constable who ventures to execute such warrant will incur the same forfeiture. Eve *225 ry juror who serves in the United States courts is employed-under the judiciary department. Every militia rnan who is called into the public service is directly employed under the executive. Was it ever heard of that a justice, constable, burgess, or alderman, was exempted from the muster roll, because service under- the United States was incompatible with his state office? Every contractor for roads or canals, every labourer upon them, every builder of ships or light-houses, may be said to be an agent, or, if not an agent, he is a person employed. There would be no end to the vexations that might be pointed out. , To take one case out of thousands, that of printers of newspapers, and therefore most applicable to the present, who are-every day called upon to give information' to the public relative to the army, or the -navy, or to contracts, public lands, or the post office, — such, for instance, as the publication required by law, of a list of letters remaining in the post office, in some newspaper of the place, how many places in the country are there where the printers are liable to suits for penalties, and to motions of quo warranto -under the construction now attempted of the act of 1802? I happen to live in a post town where there are 'but-two newspapers printed, and each editor is a justice .of the'peace. • . •"
But what seems the most inadmissible part of the doctrine is yet to be mentioned. By separating the words in the law of office or appointment of trust or profit, from the words relative to agency or employment, w-e should make it wholly immaterial whether there is any profit or trust"in the case or.not, so that, -without any contract at all, one of the state officers, named in the law, by volunteering his services under any department of the federal government, or if he should happen to be detected in time of war, in the ranks, or at work upon some fortification, under the federal government, though without any pay, yet being • clearly employed, he would "as clearly come under this construction of the act. This is no caricature of the doctrine advanced by the counsel. One of the gentlemen has contended expressly, that ’ Mr. Binns, over and above the job of printing the laws, has forfeited his office, and from fifty to five hundred dollars of additional penalty, by the contract for furnishing stationary to the collector’s office, under instructions from the secretary of the treasury. I mention this to show the counsel’s interpretation of the words agent and person employed. And he is right in’ this, if he is right in his construction of the act. But it strikes me to bo a doctrine which, as to its consequences, defies all aggravation. It will,- no doubt, be admitted, that the extent of the dealing can legally make no difference under-this act of assembly; and it must be admitted, upon the principle of the equal obligation of the laws, that if Mr. Binns is liable to the penalty of the act, on this contract of sale, then any-other alderman, or any justice of the peace, or burgess, constable, inspector, or clerk of election, must be liable to the same penalty for selling a basket of *226 bread, or pound of candles, to the master of a revenue cutter. As this whole doctrine throughout would imply' unequivocal hostility to the Union, and as to enforce it upon all occasions, would, perhaps, be more effectual to put down the operations of the federal government in Pennsylvania, than the resolutions, of non-intercourse were against the British government at the revolution, it seems to me impossible that the legislature-of 1802 could halve imagined any such interpretation. ' -
. A Word used, in Mr. Clay’s letter'has been relied on by the counsel. He twice mcntions, appointment. I take it, if there is nothing in the constitution, nor in' the law, nor in the.facts of the case which brings Mr. Binns within the penalty, it will certainly be rather'hard to bring him in by virtue of .a word casually employed by the secretary. If I recollect the paper rightly, Mr. Clay first uses the-word designated. But-if he had used the term appointment throughout, it would have been, in my opinion, but'a small matter. Appointment is often synonimous with office; but-it is. by no means always so. Numerous instances may occur to every one. Visiters of1 the West Point Military Academy áre appointed by the secretary of war, yet, perhaps, it was never once imagined that such appointment was an office under the'government, and therefore incompatible with the station of member of congress, or member of assembly. State officers are frequently appointed to do many' things for the United Stales. The judges of the state courts are appointed to .take the evidence of the service o'f old-soldiers to . be pensioned. Sheriffs; jailors, and public prisons, are -appointed and employed to- perform the same duties to the federal government, in the safe keeping of criminals, which they owe to the státe government. In Mr. Biddle’s case, decided- by the senate of the commonwealth, the word appointed was expressly used in the act of congress itself. '
This case, therefore, I take to be one out of the letter of the act of 1802. Further, I do not' believe it comes within the spirit or intent of the law, and have given my reasons. . But suppose in this I am mistaken; that, .by a liberal construction, the case may be brought within'the act (and I 'am not inclined to have the greatest faith-in my own judgment, when opposed by'that of so respectable a portion of this court;), yet still, it appears to, me, the result must be the very same; and we must refuse the quo warranto, if we are to regard previous decisions. This' identical case may not have been decided; but the principle is settled, if any thing of the kind .ean be said to be. settled. The question of incompatibility is no newqueslion. The established rule is to give the strictest possible construction to every part of the constitution, and to every act of assembly, declaring state offices incompatible with offices or appointments under the federal government, or declaring different state offices incompatible with each other, and never to hold any thing to be within fhe prohibition unless expressed and named; and to *227 take in no possible ease by construction. This principle has been established byévery authority known in .the land: by the people in their elections, by the legislature in their appointments, by «each separate branch of the legislature in their solemn decisions, by the-governor in his appointments, and by the courts of law in their judgments. The reasons why the rule has become so deeply fixed, as never to be varied-frond in any single case, are not, I think, for us to examine. If they were, I should be inclined to dissent from one of the counsel of Mr. Binns, who has adduced the maxim which requires a strict construction of' all penal laws. There appears something in that too technical for the production of such universal effect. ■ I would rather believe the effect to be produced by the op-parent harshness of taking, unless where some plain and unequivocal precept requires it, from the people, or from the agents of the people, their power of intrusting the public business to those men whom they may think most fit to.be trusted, especially when it is the case, and probably always has been.the case in Pennsylvania, that,of all the offices in the commonwealth, there is not one in twenty, perhaps not one in fifty, the emoluments of which will enable á man to support a family without something else to do. To begin with the constitution of 1776, which contained a clause of incompatibility similar to that of the present, as to all the purposes of this argument. The legislature chose Dr. Franklin as a delegate to congress. while he was envoy to France. This election was censured, by the council of censors, as unconstitutional. The reasons of the legislature I have not seen. Therefore I give the malter as a fact of old times, not as a precedent. • But, under the present constitution, I mention the decisions as precedents. The clause already cited declares that “ no member of congress, or other person holding any office (except of attorney at law, and in the militia) under the United States, or this commonwealth, shall be á member of either house during his continuance in congress, or in office.”'
Now, let us take first that most familiar case of deputy survejmrs, and of deputy attorneys general. They are officers, in a certain sense, most clearly. They are not appointed by the governor, but they are appointed by him who is appointed by tide governor. They receive fees of office. The act of assembly (2 Sm. Laws, 31,) creating the post of deputy surveyor,, names it an office in nearly half á dozen places. It imposes an oath to do and perform the duties of the office with fidelity and impartiality to all men; and the oath is to be signed by the officer, taking the same. The very supplement to the incompatible law, under which, we áre now deciding, names the office of deputy surveyor. They are important offices, they are necessarily local, and the dutiés of them must be frequently, if not constantly, in requisition. I am persuaded no man will deny that these offices come within the reason of,the prohibition. But they do not come within the letter of it, according-to the invariable construction put upon the words by the whole commonwealth. From *228 the very first the people have frequently sent to the legislature those officers to represent them; and the same men, though contriving to hold the same offices, have, been frequently re-elected. To mention a few instances may be sufficient. The present Chief Justice of this court was sent a representative from Cumberland county, though deputy attorney general at the same time. Mr. Farrelly, while deputy attorney general of Crawford county, was also a member of the house.' So Mr. M'Arthur, a deputy surveyor of the same county, was member of the senate in 1804, 1805, 1806. General Piper, while deputy surveyor of Bedford county, was a member of the house.in 1805, 1806, 180.7. Mr. Dale, deputy, surveyor of Venango county, from 1809 to 181.5. Colonel Orr, deputy surveyor of Armstrong county, in 1818, 1819. Mr. Hyneman, of Berks county, and many others.
This matter has not been decided' by the people only. It has been repeatedly brought before the legislature. In the'house of representatives, sessions 1816, 1817 {Journal, page 355,) a resolution was moved by Dr. Leib, ‘f that the surveyor general, and attorney general, be directed to. furnish, to this house, the names.and places of residence of the deputies under their appointm'pnt.” The •object of this resolution was known and declared, and (page 363) was considered by the house, and rejected: yeas, 34; nays, 49. Again, in the senate, sessions, 1820, 1821, (Journal, page 75,) a motion was made, by Dr. Leib, as follows: “ Whereas the constitution of this commowealth provides that no senator or representative shall, during the time for which' he.shall have been elected, be appointed to any civil office'under this commonwealth, which shall have beén-created, or the emoluments of Which shall have been increased during such time: and no member of congress, or other person holding any office (except of attorney at'law, or in the militia) under the United States, or'this commonwealth, shall be a member of either house during his continuance in congress, or in office. And whereas Philip S. Mar¡sley and Isaac D. Barnard are deputy attorneys general, and holding offices under this commonwealth, are not entitled to be members of the senate. Therefore resolved, that Philip S. Marhley and Isaac D. Barnard are not entitled to be members of the senate, and their seats are hereby declared to be vacated.” Ordered to lie on the table. Friday, December 22d, 1820. (Page 135.) The resolution read bn the 13th instant, relative to vacating, the seats of Mr. Marhley and Mr. Barnard, was again read, and the same having been considered on the question — will the .senate adopt the same? — the decision was in the negative. Yeas, 2; nays, 25. That most conclusive decision of the senate, in the case of Mr. Biddle, has been mentioned already.
I hold that we. aré bound by these decisions, not only from the weight of character of legislators and immediate representatives of the people, but because their decisions are final without appeal; the *229 constitution having made them the exclusive judges of the qualifications of their own members. For us to set up a rule different from the one adopted every where else, may have the effect of producing not confusion only, but absolute injustice, if it is injustice to adopt an interpretation against one officer, from which.every other officer, from the beginning of the government, has been exempted. Let us attend, for one moment, to the construction put upon the supplement to this very law of incompatibility under which we are now acting. The third section provides (5 8m. Laws, 309,) “ that no member of either branch of the legislature of this .commonwealth, shall, during the time for which he shall have been elected, hold any other, office or appointment within this commonwealth to which perquisites or fees are attached, under fhe constitution or any law, except in the militia, attorney at law, or elective offices and appointments by the people, and by the courts of justice.” There wras some doubt at first, but the strictest construction of this section has been established without any dispute or the appearance of it. General Ogle was appointed prothonotary of Somerset county by Governor Snyder; Judge Wilkins was commissioned by Governer Findlay; Judge Lightner, of Lancaster county, by Governor Hiester; Judge Shippen by Governor Shulze. All these gentlemen were appointed during the time for which they were elected to the legislature.
But there is á train .of authorities still more conclusive, in my opinion, if it is possible for any thing to be more conclusive. The constitution has b.een already cited, declaring that “ no member of congress, or other person holding any office (except of attorney at law, and in the militia,) under the United States, or this commonwealth, shall be a member of either house-during his continuance in congress, or in office.” And again, “ no member of congress from this state, nor any person holding or exercising any office of trust or profit under the United States, shall, at the same time, hold or exercise the office of judge, secretary, &c.” Yet Mr. Samuel Maclay was elected senator to congress while he was speaker of the senate of Pennsylvania; and he continued to sit in the state senate even after the third of March, though his right was disputed, and the question was brought to debate and decision before, one or both houses óf the legislature. Dr. -Leib, a member of assembly from this city, held his seat, in the house, for some short time after his election, to supply a vacancy in the United States senate. I do not know that, as to him, the matter was disputed. But afterwards, General Lacocle and Mr. Roberts, being chosen members of congress while they were in the senate of the commonwealth, they themselves voluntarily, brought before the senate the question of their right to continue members of that body after the term for their service in congress had .commenced. Mr. Wayne, chairman of the committee to which the subject was referred, brought in an argumentative and able report denying the *230 right. But this decision of the committee was reversed by the senate, and the two gentlemen continued to hold1 their seats after their term for service in congress had commenced. In strict conformity with all these precedents, General Barnard, while holding an office expressly named in the constitution, that of secretary, being elected United, States senator, did, as we all know, continue to hold the office of secretary of the commonwealth until last November. Rightly, in'my opinion, according -to old construction and precedents. But if the ancient rule of rigid literal interpretation were to-be abandoned, it would seem to me that the arguments in this case, relative to the employment of Mr. Binns, by the United States, to print the laws in his newspaper, being prohibited to him as an alderman, are exceedingly light compared to the arguments whióh will suggest themselves in all the other cases mentioned.
To finish the chain, of authorities,-we have the decision of this court'in the case'of Mr. Dallas. . He held a commission under the United States. He was, at the same time, recorder of the city of Philadelphia, and, as such, his chief duty was that of judge of an important court of Pennsylvania. The word in the constitution, under which the case was decided; is judge. Mr. Dallas was judge in effect; in name, recorder. The argument was-identically .this, as reported in 4 Dali 229:' that the recorder of Philadelphia is a judge, and tbat.th- policy of the exclusion originated in a jealous}7 lest the federal government should overshadow the state governments; and if there was a doubt upon the subject, that policy required a decision affirming .the incompatibility of the offices in question. But. this court unanimously answered, no; and held that the doubt and uncertainty' of the letter was to have an operation directly the reverse. ’ . -
As to the argument of the influence of contract being much more strong-and effectual than all the influence of office, and therefore to be guarded against, this may be true. Probably the money expended by the United States Upon contracts may amount to many times more than all the fees and salaries of their officers. But this, I take it, being quite as well known to our legislators as it can be to us, had they intended' to include contracts in the prohibition, they would have said so, and not have left such a most extensive and important provision merely to construction and argument; while they are caréful to specify and name, in the law, so many other very inferior matters. What language do reasonable men make use of when they are framing a penal law, which they wish people to understand, declaring offices and contracts incompatible ? The law of congress on.the subject will give us the fullest answer. (4th Vol. 166.) And the canal bill lately pen'ding, or now pending, before our legislature, wil{ also show us what words are used in a law where contracts are prohibited to public men.
Therefore, as, in my opinion, this case of Mr. Binns comes not within the words of the rule, nor within the meaning of it, nor can *231 be brought within either, unless by a construction which has never yet been applied against any officer in the state, I am against the motion.
Huston, J., concurred.
Rogers, J.
The facts of this case are comprised within a narrow-compass. The 2d of Dec. 1822, the respondent, at that time and now the editor of the Democratic Press, was appointed one of the aldermen of the city of Philadelphia. The 13th of November, 1825, under an act of congress, passed the 20th of April, 1818, the secretaly of state-authorized the respondent to publish in the Democratic Press, the acts and resolutions of congress, for the session of 1825, and, by an instrument of similar import, dated 'the 7th of December, 1826, for'the session of 1826, 1S27. The question is, whether, by becoming the publisher of the a.cts and resolutions of congress, under the authority as above stated, the respondent ceased to be an-alderman. And this will depend on the construction of the Sth section, and second article of the constitution of Pennsylvania, the act of assembly of the 12th of February, 1802, and the act, of congress, fo which reference has been made in the statement of the case. It is for the public interest, that the right, by which a citizen claims the exercise of judicial powers, should be free, even from süspicion; and, although I, in common with the other members of the court, regret the occasion which has given rise to this controversy, yet, as a question in ■which every citizen has a deep stake, it is not to be regretted that an opportunity has been afforded, to test the validity of the claim of the respondent to the office he now holds.
As the question so materially depends on the meaning of the eighth section, and second article, of the constilutiori of Pennsylvania, the act of assembly and of congress, I shall be pardoned for the incorporation of s'ome of their principal provisions into the body of the opinion. ",
" By the eighth section and second article of the constitution of Pennsylvania, no member of congress from this state, .nor any person holding or exercising any office of trust or profit under the United States, shall, at any time, hold or exercise the office of judge, secretary,- treasurer, prothonotary, register of wills, recorder of deeds, sheriff, or any office in this state to which a salary is by law annexed, or any other office which future legislatures 'shall declare incompatible with offices or appointments under ,the United States.
The constitution of Pennsylvania was adopted the 2d of September, 1790. The constitution of the United States was done in .convention, the 17th of September, 1787; and being ratified by the requisite number, the government; went into operation in the year, 1789. • .
It has been supposed that the word appointment in the latter part *232 of the section, was introduced without sufficient consideration; that it was, as is contended by the counsel for the respondent, in their ingenious and able arguments,, synonymous with office. It struck me as singular, that the wise men who framed this charter of out-rights, should use a word altogether tautologous, and without any apparent intended effect in an instrument,’every word of which,- I had always believed, was fraught with the most precise, and definite meaning. And this led me to a more attentive investigation of the import of the term, which satisfies, me, such an error has not been committed. The-convention had before them the con-stitution of the United States, as is apparent, from the instrument itself, and were possessed of a full knowledge of the offices and appointments, then held and exercised under the federal government. The convention provided against (and there never was any necessity of going further,) the offices, as they were then held, and exercised under the government of the United States, at the adoption of the constitution, and made them incompatible with certain enumerated offices in the eighth section.
The members of the convention, however, reflected that the government of the United States might fall into the hands’ of men, whose aim was consolidation, or individual advancement, who might multiply offices, under the name of appointments, and by'‘this means obtain an undue influence in the state. With that prudent forecast, for which they are so much distinguished, ánd for purposes of counteraction, a shield was placed in the hand of future legislatures, giving them tfie power of enacting, as they may judge the exigencies of the times may require, that the holder of an office under the state government,- shall not,.at the same time, hold either an office or appointment, under the- government of the United Stales. In my view, the convention have vested in .the legislature, a high, discretionary power; and it would ill become this court, without the most cogen.t necessity, to attempt to circumscribe them in the legitimate use of it. Let the attempt be disguised as it may, (and the convention had thought the attempt possible,) under the term office, appointment, or employment; yet that future legislatures should have the power of declaring such office, appointment, or employment, however denominated, incompatible with offices under the state of Pennsylvania. It is evidently a power vested in the legislature, of enlarging the list of- offices, or appointments, rendered incompatible by the constitution itself. .
. By providing) that no persons holding an office of’ trust or profit under the United States, shall, at the same time hold any office under the state,'which future legislatures shall declare incompatible with offices, or appointments, under the United States, the convention-has expressly authorized the legislatures, to carry the principles further in its details, than they thought proper, or necessary to do themselves, and to apply it to new cases, by giving a practical exposition to ambiguous terms, purposely left so in the *233 constitution; thus vesting in the legislature a latitude of authority, which it is. not competent for this court to restrain.
Whether this was a salutary jealousy, is not for u's to inquire. It is part of the history of the country, that a jealousy did exist, which, perhaps, it is matter of regret, has not much- abated in more modern times.
The convention have carefully distinguished between an office and appointment. When they speak of the United, States, the words office or appointment are used; when, in reference to Pennsylvania, it-is confined to office. That which future legislatures have-the power of making incompatible with, an office or appointment, under the United States, must be strictly an office. And ia proof o,f this idea, it will be found, that all the officers declared incompatible by the legislature, are strictly so within the meaning and words of the constitution. They are justices of the peace, mayor, recorder, burgess or alderman, physician of the Lazaretto, judge, inspector or clerk of elections, clerk of the Court of Quarter Sessions and Orphans’ Court, and deputy surveyor.
An office (officium,) is defined by Sir William Blackstone, to a right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging, whether public, as those of magistrates, or private, as bailiffs or receivers, and the like.
Officers are public or private; and it-is said that every mán is a public officer who hath any duty concerning the public; and he is not the less a public officer when his authority is confined to narrow limits; because it is the duty, and. the nature of that duty, which makes him a public officer, and not the extent of his authority-. Garth. 4.79.
The word office, in the constitution of Pennsylvania, and the United States, is a term of the most extensive signification, and includes almost every employment of a public nature, holden immediately from the government, or the people themselves. The constitution of the United States contemplate two classes of officers; the superior officers, such as the heads of the department, to be appointed by the President of the United States, by and with the advice of the senate; and inferior officers, such as are provided for in' the second paragraph and second article of the constitution of the United States.
Congress may, by law, vest the appointment of such inferior officers as they think proper, in' the president alone, in the courts of law, or in the heads of department.
By virtue of this section it was, that congress vested the power of appointment of printers “ by authority” in thé secretary of state. But whether this be an inferior office, in the strict meaning of the word, it is unnecessary to determine, as we consider the word appointment, especially as explained by the act of assembly of 1802, *234 even more comprehensive, and so intended by the framers of the-constitution of Pennsylvania
Every office is an appointment or employment, but it does not follow that every appointment is an office. They are not convertible terms. For instance, the attorney general holds an appointment as well as an office, his deputies an appointment; and this is one-of the reasons, and the most cogent, that deputy attorneys general are eligible to the legislature, although the attorney general is not. The, disqualification created by the eighteenth section of the first artielé of the constitution, extends to a person holding an office. It does not in terms embrace the case of a person who holds an appointment merely; and this is one of the reasons urged for the claim of the right of the legislature to name canal commissioners, and other appointments of a similar nature! That the word appoint-ment is sometimes used as synonymous with office, is admitted; but it is submitted, that it, is not so to be understood in the section now under review.
I do not find that, the word appointment, as used in the eighth ..section, has received a judicial definition, nor has it been defined by our most approved lexicographers. The constitution, however, has received a legislative construction in the act of the 12th of February, 1802. The legislature, with a .recent decision of the Supreme Court before them, (The Commonwealth v. Alexander James Dallas, 3 Yeales, 300,) passed an act, entitled, “An act declaring-the holding of offices, or appointments under this state, incompatible with the holding or exercising offices or appointments under the United Stales.
■ Sect, 1. “ Every person'who shall hold any office or appointment of profit or trust under the government of the United States, whether a -commissioned officer or otherwise, a subordinate officer or agent, yvho.is or shall be employed under the legislative, executive, or judiciary departments of the United States, and also every member of congress, is hereby declared tó be incapable of holding or exercising, at the same time, the office or appointment of justice of .the peace, mayor, recorder, burgess, or alderman of any city.”
The act of.assembly seems to have been penned with great care, and, it must be admitted, is very comprehensive in its terms. It extends to every person who holds eiiher an office or appointment, whether a commissioned officer or otherwise, or a subordinate officer, or agent, who is or shall be employed under the legislative, executive, or judiciary departments of the United States. The legislature seem to have anticipated evasion, and for us to give the terms they have used a narrow and confined interpretation, would, in my opinion, (and I speak with the- utmost’deference to .my brethren who dissent from me,) bé to make and not expound the law. 1 am unwilling that legal .ingenuity should defeat what has been so dearly and explicitly enacted. The legislature should never have *235 1’eagon to complain that laws which are within the pale of the constitution, have received other than a fair and candid constiuct.ion.
When the legislature speak of persons employed under the legislative, executive or judiciary department, they do not intend an occasional employment, such as those stated at the bar,-of a cabinet' maker, tailor, &c., who are paid for some job work done for the public service, but they intend an employment, permanent in its nature, and implying trust and confidence. It is the nature of the duty which brings the case within the act of assembly. And this is illustrated by the case cited from 2 Sid. 142. There is a difference between an office and an employment, every office being an employment; but' there are employments which do not come under the denomination of offices; such as an agreement to make hay, plough land, herd a flock, &c., which differ widely from that of steward of a manor. From these considerations, I have come to the conclusion, after a complete examination, that the legislature have not exceeded the limits of the constitution, by the extension of a power, wisely intrusted to them, of meeting, by legislative enactments, attempted evasions of the provisions of'the constitution. The act of 1802 is therefore, to be construed as if it had been originally incorporated into those provisions. And this leads to the inquiry whether the. respondent has accepted an office, appointment, or employment, incompatible with the .office he holds under the state of Pennsylvania. This will appear from an examination of the act of congress of the 20th oidlpril, 1818, and of the arguments of the respondent’s counsel.
The first section of the act, entitled, “ An act to provide for the publication of the laws of the United States, and for other purposes,” provides, that, at and during the session of each congress of the United States, the secretary of the department of state shall cause the acts anil resolutions, passed by congress, to be published in one newspaper in the district of Columbia, and in three newspapers in each state and territory. In the third section it is enacted, that the proprietor of each newspaper in which the laws, resolutions, treaties, or amendments, shall be published, shall receive as full compensation therefor, at the rate of one dollar for each printed page of the laws, resolutions,' and treaties, as published in the pamphlet form, in the manner herein directed. And if it shall appear in the examination of any account, that there has been any un-; reasonable delay, or intentional omission, in the publication of the laws aforesaid, the proper accounting officer of the treasury, is hereby authorized and required to deduct from such account, such sum as shall be charged therein, for the publication of any laws, which shall have been so unreasonably delayed or intentionally omitted. -And in any such cáse, .if shall be the duty of the secretary of state to discontinue the publication of the laws in the newspaper, belonging to such proprietor, and said newspaper shall in no event be again authorized, nor shall the proprietor thereof he *236 again employed, to publish the laws' of the United States. It is the emphatic,language of the act, that such newspapers shall in no event be again authorized, nor shall the proprietor thereby be again employed, to publish tlie laws of the United States. To be again employed, necessarily supposes that- his appointment was an employment within the purview of the act of congress, which brings the case within the words and intent of the act of the 12th of February, 1802.
The object of the act of congress, afte'r providing for an appointment. by the secretary of state,, appears to have been, to secure the faithful and punctual performance of' the trust. And their' solicitude will appear from the severity of the penalties imposed, which are all, as cannot fail to be observed, on the proprietor himself. Unreasonable delay, or intentional omission, is punished by deduction of the sum charged for the publication.. The secretary of state is directed to discontinue the publication of the laws in the newspaper, belonging to such proprietor. Such newspaper shall in no event be. again authorized; and lastly, the proprietor himself shall not be again employed to publish the laws of the United States.
The prohibition of any future publications in the newspaper is a penalty on the- proprietor, and' intended to prevent-him, by sale of the newspaper, attempting to secure himself from the effects of his delinquency.
• It may afford us some light, to inquire into the construction which has been given to the act of congress, by those in whom the right of appointment was vested. The act may, in some measure,, be considered as having received a cotemporaneous exposition, entitléd to more weight, from the character of the distinguished statesmen and jurists who presided over the department of state.o The authority under which the respondent acts, prepared no doubt with a single eye to the import of the act of congress, is contained in a letter from H. Clay, secretary of the state, to the editor of the Democratic Press. In this, it is expressly called an appointment. “It is expected that, under the present appointment, you will conform to the custom, without additional charge, however, on that account.” Again: “ And, that you may the more easily distinguish those, which, under this appointment, are intended for publication,” &c.
From the letter of the secretary of state it is also manifest, that it-is the respondent, and hot the newspaper which receives the appointment. It -contains specific and precise directions for his government, and prescribes thé mode of transmitting and receiving his accounts. It is an appointment in some measure fiduciary; connected, however, as it ought to be, and necessarily must, with the newspaper; the medium through which the proprietor, by authority, publishes the acts and resolutions of congress.
The National Journal is to be transmitted to the respondent; and, when he misses a number, he is directed to apprize the de *237 partment of the circumstance, that the omission may be immediately supplied.
The citculation. and usefulness of a newspaper depends upon the talents and industry of the editor. It is the respondent who gives life and character to his Journal: and who is so jnattentive to the passing occurrences of the day, as-nót to know that the publishers of the acts and resolutions of congress have been sometimes selected for their zeal and talents as partisan editors? Are we to believe it was the Democratic Press, and not the respondent, that was in the view of the secretary of state when he made the selection ? I mention this, not with the view' of censuring the course pursued, but. for the purpose of showing the motives and reason which may have induced the selection.
The appointment of publisher of the acts and resolutions of congress has been considered, and I may add used, as part of the patronage of the secretary of state; nor, perhaps, is it going too far to say that it was'so intended by congress.
It has. been contended, with great earnestness, that this is a contract, and not an appointment. It does not strike me, that it can be considered any more in ihe light of a contract, than any appointment to which a salary is affixed, or certain.compensation attached. It amounts to an engagement, that whilst the appointment continues the duties shall be performed.
Unreasonable delay, or an intentional omission, would not subject the repondent to suit for breach of contract. ' The penalty is prescribed, (and is sufficiently severe,) in the law itself. Could it be contended, with any prospect of success, that if the respondent discontinued the publication of the Democratic. Press altogether, he would subject himself to suit for breach of contract by the United States? Was that the intention of congress when they passed the act of the 20th of April, 1818? If so, neglect, in the eye of congress, must be a highly penal offence, punishable by forfeiture, and by suit also.
If congress considered this a contract, why was it not so denominated as in the 7th section ? also, why was not surety required ' for the faithful performance of the contract?
A mere contt'acl would not give the work executed under it the stamp of official authority. If the agency of the.respondent were merely mechanical, it would require an act of authentication and publication to be.superadded by his employer, such as a certificate'of the accuracy of the copy, and of its having the sanction of the government, as has sometimes been practised in regard to the laws of our own state. Instead of this, the newspaper printers of the laws of the United States usher them in with thé words, “by authority.” This is an assertion of official authority in the printer to give to his art the authenticity of an act of the government. And it does in fact, acquire that soft of authenticity by being thus published. In Biddis v. James, (6 * Binn. 321,) the copy of a private act of *238 assembly, printed .under the .authority of the state, was admitted without producing an exemplification of the original roll. Would the mere job work of a printer, employed fay the. department for mechanical purposes, be received as evidence without any other act of authentication than such as he should be competent to execute? In Biddis v. James there was a certificate by the proper officer, that the printed cop\ had been compared with the roll; and there no doubt.'the printer was employed only as a mechanic. Here, however, there was no act of authentication by the department; and yet a private act of congress, published by the respondent, would have been admissible in courts of justice. It cértainly would have been entitled to more respect than a law published by a printer of his own head.' But, whenever a,printer is employed by the government for any but mechanical purposes, his duties are essentially official. Here the respondent was not.even' to be furnished. with a copy by the department, but was to watch the files of the National Journal for what he was to furnish; and report any failure that should occur in the regular transmission of that newspaper to him, &c. He. was to exercise a supervising agency, subject to the control of the department, and receive a stated compensation, not for any particular job, but for his services while he should remain in the service of the public; and in this it is difiacult to distinguish the- relation which he was to bear to the government, from that of any other subordinate attached to- the department. The very nature of the employment of a printer, “ by authority,” is essentially official. It would be extraordinary, indeed, that that which may be the result of personal confidence, could be transferred to a person in whom the appointing power placed no confidence. This is evidently not the intention of the framers of the act of congress, which does not contain a word on the subject, and it would be matter of regret if it-admitted of any such construction. It might pass into the hands of a personal enemy; nay, the patronage of the executive department of the government might be a means of annoyance in the hands of an alien enemy; and this is an argument to show that it is the proprietor, and not the newspaper that is in the view of the act of 1818.
Cases of contracts, in special cases, have been stated, and it has been asked, whether they are within the 8th section of the. constitution? The act of assembly, which is explanatory of the constitution, does not intend an occasional contract, as was before observed, but a permanent employment. These cases might be multipled without end, without elucidating this case'in the slightest degree. When the legislature has clearly manifested an intention to embrace the cases supposed, it will be for this court respectfully to say whether the acts be in accordance with the principles of the constitution.
. The case of Mr. Biddle has been relied on. by the counsel of the, respondent. Charles Biddle, at the time a member-of the *239 senate of Pennsylvania, accepted an appointment under the third* section of an- act of congress to authorize the issuing of treasury notes: “ That the .said treasury notes shall be respectively signed in behalf of the United States, by persons to be appointed for that purpose by the president of the United States.”.
It was contended, but without success, that the acceptance of the appointment by the president vacated his seat in- the senate. The question arose, in the eighteenth section of the first article of the constitution.
“ And no member of congress or other person holding any office, ,(except of attorney at law and in the militia,) under the United States, or this commonwealth, shall be a member of either house during his continuance in congress, or in office.”
We are left in the dark as to the reasons of the senate, which may have been as various as the members themselves. The result we know, was, that Mr. Biddle retained his seat.* Although I entertain the most sincere respect for the member of the government which made the decision, yet it may well be doubted, whether they did not take a narrow view of the import of the term office, as used in the constitution of the United States and Pennsylvania. That it was an inferior office within the meaning of the 2nd paragraph, 2nd section, 2nd article of the constitution of the United States, would not with me, have admitted of much doubt.
The decision of the senate, as ¡ understand it, amounts, to this and no more, that. Mr. Biddle held an appointment and not. an office, and was, perhaps, justified in senate by considerations such as these, which may seem to illustrate the distinction between an office and appointment. The act of congress terms it an appointment, cot an office. It is made by the president alone, and not by and with the advice of the senaie. The 18th section of the ,1st article of the constitution of Pennsylvania speaks of office, and not office or appointment; and, lastly., when the convention intend a distinction between an office and appointment, they make it with sufficient precision and clearness, as is apparent-front the 8th section of the second article, now under review.
Another consideration may have been suggested. The attorney general cannot be a member of either branch of the legislature, but his deputies may; because, the one holds an appointment, the other an office. '
If the 18th section of the 1st article, had used the term office, or appointmemt, it is difficult to perceive how they could have sustained the right of Mr. Biddle to his seat. Had that been the case, a different result would most pro.bably have been the consequence. The decision of the senate does not, therefore, in my judgment, govern this case; neither do I think the point affected by the decision of the same body, on the question of vacating the seats of Messrs. Barnard and Markley, for the reasons-before stated, and which it would be useless to repeat.
*240 What authority can the employment of a person, to do a job as a mere' mechanic confer? If it be an employment for general purposes of supervision, n.ot generally involved in the mechanical part, it is another matter: that would be a substitution' of the party employed - for the party who employs, him,, and the former would act by-virtue of a delegated authority. Under the act of congress, it would be refining loo much to say that the secretary-is the- publisher of the laws, and the editor the publisher of the other matter contained in his newspaper: yet that consequence would be inevitable, if the newspaper, and not the editor, was employed as an instrument of publication. Some one must be the publisher, and, if he is not the editor, who is he? - The editor is necessarily both printer and publisher; and, if so, he must be the depository of an authority to publish. It is not easy to comprehend what is meant by an authority vested in a. newspaper, distinct from the editor. By the act of 1818, thé 'secretary of state is required to cause the acts of congress to be published “in not, more than three newspapers in each of the several states.,? But he is not expressly?required to designate the particular papers, although that be altogether proper, to prevent the persons employed by him from publishing in obscure papers, of limited and partial circulation. The authorizing a newspaper is mentioned, but this is in reference to a newspaper which has been employed, but abandoned for misconduct of the editor; and, in such case, it is said such paper, shall in no event be again, authorized. -But, it is instantly addéd; “ Nor shall the proprietor thereof be again employed.One of the objects intended to be effected by the use of these expressions, was to prevent a defaulting editor from continuing to enjoy the patronage of' the goverriinent, by the contrivance of a sham transfer of his paper, or a change of-its title, not to force on the secretary to the absurdity of vesting authority in an inanimate and irresponsible thing. Printers of legislative bodies are elected, which shows that their relation to the public is official; and that the printers of the laws, under the act of 181S, are not eligible in, the same manner, is owing entirely to the circumstance, that the power of appointment is vested in an individual.
Whether the respondent can resign his.appointment, in the common acceptation of the term, it might be needless to inquire. But, suppose this could not be done without the consent of the secretary, I do not perceive that it necessarily follows, that this is a contract, and not an appointment. Officers in the army or in the navy, and foreign ambassadors, cannot resign ad libitum; and yet there is no question that they bold offices or appointments under the government of the' United States.
Congress have not considered that it was necessary to’ put it on the footing of a contract. They have instituted a penalty only for neglect, evidently on the ground that the public interest would not suffer, as there would be no difficulty in procuring the proprietors *241 of newspapers at the same rate to publish the laws of congress. The public interest will not suffer by permitting editors to decline the further publication of the laws-, upon proper notice to the secretary of state; and that they would have, this power I have no doubt. Such was, in my opinion, the understanding when the law passed.
The act of congress of the 20th of Jtpril, shows the difference, in the opinion of congress, between an appointment and a contract. When they'intend a contract they expressly say so, as in the 7th section. They direct the secretary of' state to require two good and sufficient sureties for the faithful performance of the contract; they speak of it as an agreement. They do not by the terms designate the persons, but leave it altogether to the discretion of the secretary to make such contract as may be most advantageous to the public. I think it will be found, that in all cases of contracts under the laws of congress all the formality of agreements are observed, and that ample security is required; as contracts for the army, navy, the post office, and the like.
Believing, therefore, that the respondent has accepted and now holds an office or appointment under the executive department of the United States, within the meaning of the 8th section of the 2nd article of the constitution of Pennsylvania, and the act of assembly of the 12th. of February, 1802, — I am of the opinion, that by the acceptance of the one he vacated the other, and‘that he is no longer an alderman of the city of Philadelphia.
I have forborne to notice his appointment of stationer for the custom house, as I do not consider that as varying the case.
Gibson, C. J., concurred with Rogers, J.
Smith, J.
This is an application for a rule to show cause why an information in the nature of a quo warranto, should not be filed against John Binns, to inquire by what authority he exercises the office of an alderman of the city of Philadelphia. After hearing, with attention, the ingenious and elaborate arguments of the counsel, I applied my mind diligently to the consideration of the questions involved in this case; and the more anxiously, because, from the division of the court, I must necessarily differ from two of its members, whose judgments I highly respect. Having formed my opinion, I will proceed to state the reasons upon which it is founded: if they should prove unsatisfactory to others, they have convinced my understanding, and that must govern me. The constitution of Pennsylvania, article 2d, section 8th, ordains, that “ no member of congress nor any person holding or exercising any office of trust or profit under the United States, shall at The same time, hold or exercise the office of judge, secretary, tréasurer, prothonotary, register of wills, recorder of deeds, sheriff, or any office in this state to which a salary is by law annexed, or any other office which fu *242 ture legislatures shall declare incompatible with offices or appoint," ments under the United StatesIt is obvious that the convention deemed the offices designated in this section, to be- all that ought to be included in the prohibition. Conformably to the provision authorizing future legislatures to declare any other offices than those enumerated, to be incompatible with offices or appointments under the' United States, the general assembly passed the act of the 12th of February, 1802, entitled, “An áct, declaring the holding of offices or appointments under- this' state, incompatible with the holding or exercising offices or appointments under, the United States;1’ by the first section of which, it is enacted, “that every person who shall hold any office or appointment of profit or trust under the government of the United States, whether a commissioned officer, or otherwise, a subordinate officer or agent, who is or shall be employed under the legislature, executive or judiciary departments of the United States, and, also every member of congress is hereby declared to be incapable of holding or exercising, at the same time, the office or appointment of justice of the peace, mayor, recorder, burgess or alderman, of any city, corporate town, or borough, resident physician of the Lazaretto, constable, judge, inspector or clerk of election^ under, this commonwealth.” By .the 2nd section, the holding of any of the aforesaid offices or appointments under this state, is declared to be incompatible with any office or appointment under the United States; and, by the 2nd.and 3d sections, every such commission, office or appointment, so holden under the government of this state, contrary.to the true intent and meaning of this act, is declared te be null and void, arid every person who shall exercise any offices or appointments, the exercise of which is declared to be incompatible, shall, upon conviction, forfeit and pay any sum not less than fifty nor more than five hundred dollars. Such are the penal inflictions of this act, and severer they ought not .to be. It is true, as was urged by the counsel for the relator, the act does not inflict corporal punishment on the offender, but that is not an essential feature of a penal law. I am perfectly satisfied, that this is a penal act, and that it should therefore be construed strictly.
The facts which, it is alleged, invalidate the commission of the respondent as an alderman, and subject him to the penalty of the act just recited, are the letters of the secretary of state, received in December, 1825, 1826, and 1827, the publication of the orders, resolutioris, laws, and treaties, of the United States, in his paper, the Democratic Press, and his receiving compensation therefor.
In the month of December, 1825, the editor'of the Democratic Press of Philadelphia, received from Henry Clay, secretary of state, a letter dated the 13th of November, 1825, which contains thejfollowing paragraph: — “ Your newspaper has been selected as one among the number designated for publishing the orders, resolutions,'and laws, except such as are of a private nature, and public *243 íreatiés with the exception of Indian treaties, which may beap'proved and ratified during the first session of the nineteeth congress.” In December, 1826, the same editor received from the .secretary of state a letter dated the 7th day of that month, authorizing him in the same terms to publish in the Democratic Press, the orders, resolutions, laws, &c., of the second session of the nineteenth congress; and in December, 1827, he received a third letter, dated the 7th day of that month, from the secretary of statej authorizing him to publish in the Democratic Press, the orders, resolutions,laws, &e., of the first session of the twentieth congress. These letters also give directions in case of a sale or transfer of the newspaper, or of a change in its title, that notice of the fact should be communicated to the department of'state, in order to obviate ,any difficulty as to the person entitled to the compensation; and the last two letters conclude as follows: — “ If you should-omit to give this department the notice thus reqpired, the amount due will be paid to the person first applying for it, .as the person best entitled to the same.”
It is admitted, that, in pursuance of those letters, the orders, resolutions, laws of a public nature, and public treaties, except Indian treaties, approved and ratified during the several sessions of congress mentioned in the letters, were printed and published .in the Democratic Press, and payment for the publication thereof was received by the respondent, as editor of that paper. It is also admitted, that on the second day of December, 1822, John Binns was duly commissioned an alderman for the city of Philadelphia by Governor Hiester; and, at the time the fetters were received, he was, and he still is, one of the aldermen of this city.' Is he, then, an officer under the government of thé United States, or has he an appointment under that government, in the sense and meaning *in which those terms are used in the law. The terms applied to the disqualifying-employment-are, “officeor appointment,” and on the part of the relator it is admitted that they áre synonymous: the language of the-act is, “Every person who shall hold any office or.appointment of profit or- trust under the government of the United States, whether a corhmrssioned officer or otherwise;” — and perhaps the only distinction between those terms, as there used., -is, that by office was meant an appointment, with-a commission, ánd by appointment, an office without one. The distinction is immaterial. As to the meaning of the word office, there is a diversity of opinion, particularly in regard to the extent of its import. Blackstone defines it to be — “a right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging, whether public, as those of magistrates, or private, as of baijiffs, receivers, and the like.” 2 Comm. 36. The late Chief Justice Tilghman, in The Commonwealth v. Sutherland, 3 Serg. & Rawle, 145, remarks, that this word is of a very vague and indefinite import. Every thing concerning the administration pf *244 justice, or the general interests of society may be supposed to be within the meaning of the constitution, especially if fees or emoluments are annexed to the office. But there aré matters of temporary and local concern, which, although comprehended in the term office, have not been, thought to be embraced by the constitution. In 1822, tbe Supreme Judicial Court pf the state of Maine, consisting of Mellen, Chief Justice, and Preble and Weston, Justices, in an opinion given to the governor of that state, say that the terms office and officers, as used in the constitution of Maine, where it prescribes art oath .of office to all legislative, executive, and judicial officers, imply a delegation of a portion of tbe sovereign power to, and possession of it by, the person filling the office, and that a person clothed by a resolve of the legislature with no other power than those of superintending the public lands, and,performing certain acts in relation to them, under the discretionary regulation of the governor, was not an officer, and therefore was hot required to take the oath. 3 Greenleaf’s Rep. 482. The constitution of the United States prescribes an oath of office to be taken by all executive arid judicial officers. It does not appear that any oath has been .required of the respondent in consequen'ce of the selection of his paper as one of those designated to publish-the laws and treaties of the United States/ nor is it pretended or alleged, that he ought to' have taken an oath. , Plow then can it be seriously contended, that he is an executive officer? Surely, if he were so, it would have been highly proper that he should have been sworn to discharge the duties of his office with fidelity in order to guard' the office, by that obligation, as far as possible from abuse. Indeed, it would have'been essentially requisite for him to take the oath prescribed by the constitution of the United States.
There are two'cases in which the senate of Pennsylvania has given a-construction to the eighteenth-section of the first article of the constitution, which ordains that no member of congress, or other person holding any office (except of attorney at law and in the militia,) under the United States or this commonwealth, shall bé a member of either house during his continuance in congress, or in office. An act of congress having authorized the issuing of treasury bills or notes, the president was empowered to appoint certain commissioners to sign, them, and for that service the. commissioners were to be compensated. Mr. Charles Biddle, a member of the senate, received from the president'of the-United States, an appointment as commissioner under that act of congress. He performed the service, and received-the compensation. This case was brought before the senate in 1812, and that body, decided, by a vote of twenty to eight, that Mr. Biddle’s seat was not'vacated. Journals of the Senate, 1812, page 33 — 143. The decision has since beeri recognised as a valid precedent by this court, in determining the construction of the word office, in article 5th, section tpd, of the constitution. Shepherd v. The Commonwealth, 1 Serg. *245 & Rawle, 1. The answer which has been suggested to this case,— that the senate may, from courtesy, have permitted Mr. Biddle to retain his seat, is not satisfactory or correct. Had there .been any foundation for such an idea, the Supreme Court would not have paid the slightest regard to the vote of the senate; whereas they have made it a basis of their own judgment in the case to which I have just referred. Here, then, is an appointment by the President himself of a commissioner to sign treasury bills, which service the commissioner accordingly performed, and for which' he received compensation; the senate solemnly decided that this was not an office, and- this court has sanctioned the decision. The other case was that of I. D. Barnard and Philip S. Markley, who held the appointment of deputies under the attorney general of this commonwealth, at the same time that they were membei’s of the senate. The decision in this case, in December, 1820, by. a vote of twenty-five to two, in the same body,, goes .to confirm the construction in the former case of Mr. Biddle. And, as the sections of the constitution to which these decisions relate, and that on which the act of 1802 is founded, though distinct, are in pari materia, it is reasonable to infer that the word office, in all of them, was used in the same sense.
The letters of the secretary of state are in strict conformity to the act of congress, entitled, “ An act to amend the act, entitled, ‘An act to provide for the publication of the laws of the United States, and for other purposes,' " passed the 11th day of May, 1820. That act does not authorize the secretary of state to grant an office or appointment to the printer; but. merely to cause any order, resolution, or law passed by congress, except such as are of a.private nature, and all public treaties, except Indian treaties, to be published in a number-of public newspapers, not'exceeding one in the District of Columbia and not more than three in each of the several states and territories of the United States. There is no'other act that I can find, (and I have searched diligently,) which authorizes such an appointment. If, then, those letters are to. be construed- as conferring an office or appointment, it is evidently one not known to.the constitution and laws of the United States. But it is urged, that the respondent is employed under the United States, and is therefore within the true intent and meaning of the act of assembly. If the employment be,such as to bring him within the act, he must be an officer, or, in other words, must hold an office. It is to be observed, that there is a material difference between an office and an employment.- For, although every office is an employment, yet there are many employments which do not come under the denomination of offices, being ordinary engagements or-contracts; such as, for instance, an'agreement to make hay, plough land, &c. 2 Sid. 142. 3 Greenleaf’s Rep 482. Now the employment of the editor of .the Democratic Press has none of the peculiar features of an office, — nothing, in short, to distin *246 guish it from an ordinary contract in the usual course of business. . • .
Is the selection by the secretary of state of the Democratic Press as one of the three newspapers designated in Pennsylvania, a stipulation attached to the paper, or to the proprietor? Clearly, I think, to the paper; since it cannot be doubted, that if the proprietor had immediately after transferred, his establishment, it would have-carried along with it into the possession,of thfe transferee, the privilege of publishing the laws and treaties, which the selection had conferred. Such was evidently the expectation and understand, ing of the secretary of state. . If the selection, on the contrary, were attached to the proprietor, as an office or appointment, it could not be transferred., It would not go along with the paper into the hands pf a vendee; because offices in this country are neither bought nor sold. The intention and effect of the selection are to convey useful intelligence to the public, through a certain known medium, and nothing more. The selection may be at the will of the secretary, but until he signified to the proprietor of the paper, no matter how often it might have changéd hands, his determination to have the laws'and treaties printed and published elsewhere, the privilege would belong to that paper in virtue of the selection. The, tenth proprietor in succession, would have had the same right to demand the compensation that John Bihns had, and would have ■received it pursuant to the regulations bf the department of state. In order further to elucidate my view of this subject, I will suppose one or two analogous cases.' The secretary of the navy requires a quantity of ship timber. His agents are sent into the interior of Pennsylvania, and, after an extensive inspection, it is discovered that I have a tract of timber land most, suitable for'the purpose. He thereupon informs me, b.y letter, that the navy yard in Philadelphia is in want of a certain number of knees, beams, &c.; and that, on the report of the.’agents employed by the department, a wood belonging to me, situate in Bern township, Berks county, had been selected.as one of the number designated for the purpose of furnishing the requisite supply, provided I should accede to the accompany ing .proposals. I accede to them, accordingly. Is this an office' or appointment of profit under the navy department? Can I be said to hold, by reason of this contract, an office or appointment under the United States, as á subordinate officer or agent of the navy department? Surely not. The selection attaches to the thing,'not to the person. To the person it is merely incidental as the owner; so that when he ceases to be the owner, he necessarily ceases to enjoy the advantage derived from the stipulation. ■ If I sell my wood, the supply is still carried on, the contribution of timber does not cease, though the vendee, not I, receive 'the profits. Again, an administrator applies to a printer: — “Your paper circulates more-extensively than any other in the neighbourhood of the intestate’s estate. .1 wish you to publish our advertise *247 ments and notices, for which you shall be paid the regular prices.” Can the printer be said to hold an office or'appointment under the administrator, on account of this application? Is it in reality any thing but a common engagement in the usual course of his trade or business? It may be called an employment, but is not known or considered as an office. Suppose the secretary of the treasury says to a stationer,- “Sir, you will please to furnish for the use of this department, so many reams of paper, so many quills, so many pounds of wafers, at the beginning of each month, until further orders.” Is this amoffice or appointment, in the common acceptation of those terms? Is it any thing more or less than an ordinary contract? I think not.
Indéed, to give the act of 1802 the latitude of construction contended for on the part of the relator, would, in my opinion, constitute every one an officer under the United States, who should, in pursuance of an agreement, print and publish a notice or perform any other service for any of the departments or their agents. Such could not have been the design of the convention who framed the constitution of Pennsylvania, nor of the legislature who passed the act of 1802; and, upon the principle of construction applicable to that act, as a penal statute, we are not authorized to indulge in a latitude of interpretation for the purpose of embracing a case, which might even appear to be within the reason of its provisions, but which was not within its terms. Whether we regard the term office as it is defined by legal authorities, or as it is employed in the constitution and laws of the United States, or as it is explained by decisions upon other sections of the constitution of Pennsylvania, in which it is used, or finally according to the common acceptation of the word, it does not appear to me that the printing and publishing of the orders, resolutions, public laws, treaties, &c. of the United States in the Democratic Press, in pursuance of the letters of the secretary of state,- is an office or appointment within the true intent and meaning of the act of assembly in question; and, under all the circumstances shown to the court, it cannot be said, that the respondent, as editor of that paper, holds an office or appointment under the government of the United States. I am therefore of opinion, that the rule in this case ought to be discharged. . ' '