POOLEY
*v.*
MOORHOUSE.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## JOHN W. ANDREWS *v.* ARTHUR SAUCIER.

The principal object of an election is the casting of votes, and the unconstitutionality of the police provisions of an election law cannot render the votes illegal and thus disfranchise the electors ; the citizens have the prerogative of voting, and the Legislature cannot, by encompassing with unconstitutional provisions an election law, make the votes of electors null and void.

If the votes of the citizens are deposited, the intent and design of an election are accomplished. It would be unwise to make an election depend on some unconstitutional provision of the police part of an election law, or on the failure to comply with its directory provisions ; for then almost every election would be contested ; the people would be virtually deprived of their elective power, and the tenure of office would depend on the will of juries and courts.

The public good demands that the will of the people, as determined at the ballot box, should not lightly be disturbed.

If the voters think proper to go forward and vote under a defective law, those who were candidates ought to be the last to complain, when the result has been affected by neither the unconstitutionality of the law, fraud, error, nor collusion.

Justices of the Peace are clothed with certain judicial powers ; but the Constitution makes a difference between Judges and Justices of the Peace. Justices of the Peace are not included in the word " Judges " in the 82d Article of the Constitution which declares that " it shall be the duty of the Legislature to fix the time for holding elections for *all Judges*, at a time which shall be different from that fixed for all other elections."

APPEAL from the Fourth District Court of New Orleans, *Price*, J.
*W. D. Hennen*, for plaintiff and appellant. *G. L. Bright* and *R. Hunt*, for defendant.

COLE, J. Plaintiff and defendant were candidates for the office of Third Justice of the Peace of the parish of Orleans, at the election held on the 2d November, 1857.

It is admitted, defendant has received the majority of the votes cast, but the right of defendant to the office is denied on four grounds which have been argued in the brief of the counsel of plaintiff with great ability and learning.

The arguments of plaintiff will be considered briefly in their order, as we have not the time to extend our remarks as much as the importance of his propositions merits.

1. " The election was held in accordance with the provisions of the Act of 19th March, 1857, entitled " An Act relative to elections in the parish of Orleans," and this statute is unconstitutional and void."

It is unnecessary to decide the constitutionality or unconstitutionality of this law ; for, if it were admitted to be unconstitutional, this would not render the election null, inasmuch as it is a police law for the maintenance of order on election days. The principal object of an election is the casting of votes, and the unconstitutionality of the police provisions of an election law cannot render the votes illegal and thus disfranchise the electors ; the citizens have the prerogative

of voting, and the Legislature cannot, by encompassing with unconstitutional police provisions an election law, make the votes of electors null and void. The Act of 19th March provided for the police of elections, and its provisions were enforced at said election; but if the election were held under the law of 1855, as alleged by defendant, and the directory portions of this law were not followed, this would not make the election null. Electors do not vote to carry out the rules created by the Legislature for the administration of voters; on the contrary, they are made for the benefit of the electors; there is an essential difference between the act of voting, and the police or directory provisions of the law intended to protect the deposit of the suffrages of the people. If the votes of the citizens are deposited, the intent and design of an election are accomplished. It would be unwise to make an election depend on some unconstitutional provision of the police part of an election law, or on the failure to comply with its directory provisions, for then almost every election would be contested; the people would be virtually deprived of their elective power, and the tenure of offices would depend on the will of juries and courts. The public good demands that the will of the people, as determined at the ballot box, should not lightly be disturbed. If the voters think proper to go forward and vote under a defective law, those who were candidates ought to be the last to complain, when the result has been affected by neither the unconstitutionality of the law, fraud, error, nor collusion.

2. "The election of 2d November, 1857, was absolutely null, so far as relates to Justices of the Peace, because held in violation of Art. 82 of the Constitution of the State."

This Article declares that "it shall be the duty of the Legislature, to fix the time for holding elections for all Judges, at a time which shall be different from that fixed for all other elections."

The election for the office of Justice of the Peace was held on a day when several other offices were to be filled, and the question arises, is a Justice of the Peace a Judge within the meaning of this Article? We admit that a Justice of the Peace has certain judicial powers, but there is a broad line of demarcation between Justices of the Peace and Judges. We are of opinion that an examination of the Constitution shows, that Justices of the Peace are not included in the word "Judges" in the 82d Article of the Constitution. The Constitution makes a difference between Judges and Justices of the Peace.

3. "That on the 2d November, 1857, there was no warrant of law for any election of Justice of the Peace for the parish of Orleans."

The Constitution ordains that Justices of the Peace shall be elected every two years, and the Act of 1855, (Session Acts, p. 497,) has been interpreted by the official authorities as authorizing an election for Justices of the Peace on the 2d of November, 1857. We admit that this law is not very lucid; but we are of opinion that plaintiff is estopped from objecting to the sufficiency of this statute to authorize the holding of an election for the office of Justice of the Peace. He argues, that the election could not be legally held, and yet in his petition he prays that he may be decreed to be entitled to said office under said election. He was a candidate for the office, and he thus recognised the validity of the law under which the election was held. If he did not believe that the election could be validly held, he ought to have abstained from being a candidate or from praying that he may be declared to be elected, and this estoppel applies to all his objections.

4. "That plaintiff's term of office has not expired."

Art. 78 of the Constitution declares that Justices of the Peace shall be elected for the term of two years. Plaintiff was commissioned by the Governor on the 24th July, 1856. He was commissioned vice *Richard Richardson*, deceased. He was, therefore, commissioned for the unexpired term of *Richardson*. It is clear, as observed by the Judge *a quo*, that as that term has expired, he cannot hold the office by virtue of that commission for any longer period of time than *Richardson* could.

The judgment of the lower court was in favor of defendant; we can see no error therein.

Vide: *Augustin* v. *Eggleston*, 12 A., 366; *People* v. *Cook*, 14 Bar., N. Y. R., p. 259. *Marbury* v. *Madison*, 1 Cranch's R., 137.

It is, therefore, ordered, adjudged and decreed, that the judgment be affirmed with costs.

BUCHANAN, J., concurring. The Act of 19th March, 1857, entitled "An Act relative to elections in the parish of Orleans, " presents to my mind several unconstitutional features. I will not, however, delay the decision of this cause at this late period of the session, by replying to an argument in support of the constitutionality of that law, which has been only brought to my knowledge within the last two days :—because I am firmly persuaded that it does not lie in the mouth of the plaintiff, to contest the validity of this election, on the ground of unconstitutionality of the law under which it was held, or of the time at which it was held.

The plaintiff alleges in his petition, that he himself was a candidate at that election; that he was elected, and that he is entitled to the office in virtue of such election. The relief which he asks is " that judgment may be rendered in favor of your petitioner and against said *Saucier*, decreeing that the latter was not elected to the office of the Third Justice of the Peace for the parish of Orleans on the 2d November, 1857, but that your petitioner is entitled to said office, and to its exercise and emoluments."

It is thus plain, that the plaintiff claims the benefit of an election which, he pleads, was tainted with the radical vice of unconstitutionality.

If his plea was sustained, the only logical consequence that could follow, would be, that plaintiff should go out of court. The plea is suicidal.

I concur in the affirmance of the judgment of the court below.

SPOFFORD, J., concurring. This is not a mere private contest, but a matter of public concern. And as I do not think that the plaintiff's allegations estop him from contesting the validity of the defendant's election to the office of Third Justice of the Peace for the parish of Orleans, I am compelled to notice, in some detail, the points which his counsel has presented in support of this appeal.

I. It is urged that the statute of March 19th, 1857, (Sess. Acts, p. 275,) entitled " An Act relative to elections in the parish of Orleans," under which, and under which alone, the defendant was elected, is wholly unconstitutional and void. If this be true, I do not perceive how a judgment declaring him to have been duly elected can, for a moment, stand.

In entering upon an inquiry into the validity of that law, we must bear in mind that the city of New Orleans is not an independent sovereignty, which, like one of the States of this Union, has parted with a portion of its power, preserving all that is not expressly delegated, but that it is, like any of the parishes, or other municipal corporations of the State, subject to the Legislative control, except in so far as the State Constitution has prohibited the Legislature from acting or furnished express rules for its action.

So far is the city from being a coördinate and independent power vested with attributes of sovereignty, that its very charter is constantly amendable and amended by the legislative will of the State. It is true, that legislative will has its limits in the Constitution, but in the Constitution alone.

Now, the Constitution has not limited the right of the Legislature to regulate elections in the parish of Orleans. On the contrary, that is a vital attribute of sovereignty which the State could not permanently part with, without creating an *imperium in imperio*. Accordingly, the Legislature of the State has always prescribed the mode of elections in the city. In some of the details, that mode has always differed from the mode prescribed for the country parishes. The Constitution declares the qualifications of voters; it does not declare, but leaves the General Assembly to declare and to change, if it will, the formalities and the mode of the election. These include the designation of election precincts, the days and hours of election, the appointment of commissioners to receive, count and report the votes, the means of securing to the voters the free exercise of the right of suffrage, &c., &c. The Constitution has not vested power to fix the places of elections, to appoint commissioners of elections, and to prescribe rules for the conduct of elections, in the municipal authorities, or in the people of New Orleans. That power is reserved to the Legislature, and if it may be delegated by the Legislature, it may be resumed at its will.

The Legislature formerly declared that the commissioners of election for each precinct in the city of New Orleans should be appointed, one by the Board of Aldermen, one by the Board of Assistant Aldermen, and one by the Police Board. Those Boards exercised the right of appointing commissioners solely by virtue of a legislative grant, which it was competent for the Legislature at any time to withdraw. In the Act before us that power has been withdrawn, and the appointment of commissioners of election is conferred upon a Central Board of Commissioners for the parish of Orleans, composed of the Mayor of the city, the Register of voters of the city, the Attorney General of the State, and two citizens of New Orleans who have resided in the State at least five years, to be appointed by the Governor. It was just as competent for the Legislature to designate this mode of selecting the commissioners of election, as it was formerly to confer the right upon the three Boards.

But, it is said that the Legislature had no right to create a " Central Board of Commissioners for the Parish of Orleans," because of Article 124 of the Constitution, which provides that " the citizens of the city of New Orleans shall have the right of appointing the several public officers necessary for the administration of the police of the said city, pursuant to the mode of elections which shall be prescribed by the Legislature ; *provided*, that the Mayor and Recorders shall be ineligible to a seat in the General Assembly ; and the Mayor, Recorders, Aldermen and Assistant Aldermen shall be commissioned by the Governor as Justices of the Peace, and the Legislature may vest in them such criminal jurisdiction as may be necessary for the punishment of minor crimes and offences, and as the police and good order of said city may require."

But the Central Board of Commissioners is a Board for the *parish of Orleans*, not for the city merely.

And its members are not " public officers necessary for the administration of the police of the said city " within the meaning of the Article 124 of the Constitution. The class of officers intended by that Article is clearly indicated by the specimens given in the proviso, to wit, the Mayor, Recorders, Aldermen and Assistant Alder-

men, permanent offices, purely municipal, having no concern in the regulation of elections, which is the business of the State. This Article did not inhibit the Legislature from creating new offices to be filled by appointment of the Governor and not infringing upon the *administration of the police* of New Orleans. So the office of Register of Voters for the city of New Orleans has been created and is filled by executive appointment, without any question of constitutionality being raised. He is not in the category of the several public officers necessary for the administration of the police of New Orleans. His powers, like those of the Central Board of Commissioners for the parish, do not interfere with the administration of the police of the city; they concern elections only, which are matters to be regulated by the State Legislature, and are not within the province of municipal administration, except in so far as the Legislature may choose to place them there.

This is obvious, not only from the very nature of sovereignty, but even from the language of that Article of the Constitution which is mainly relied on to defeat this law; it declares that " the citizens of the city of New Orleans shall have the right of appointing the several public officers necessary for the administration of the police of the said city," not by an election conducted in any manner they please, but *pursuant to the mode of elections which shall be prescribed by the Legislature.*" Art. 124.

A more complete recognition of the legislative power to regulate elections even for the municipal officers of New Orleans, cannot be conceived. The *mode of elections* embraces the whole subject of precincts, polls, commissioners, returns, and rules for the protection of the right of suffrage.

To my mind, there is no force in the objection, that the Attorney General cannot lawfully sit as a member of the Board of Commissioners, because he is classed as a judicial officer. His duties in the Board are not incompatible with his station, and if he chooses to accept and perform them, there is no bar in the Constitution to his doing so. His place in the Board is not a civil office of emolument. An Attorney General may be a Commissioner under a special statute.

This Board is required " to appoint all Commissioners of Elections in the parish of Orleans," " to designate the places of holding the polls in the several precincts in the parish and city," and " to make or cause to be made the necessary arrangements at each poll for convenient approach to the ballot box, and easy egress therefrom, and so to provide that the ballot-box, during the election, may be seen by the public, so that the voter may see his ballot deposited therein."

I think it clear that the Legislature had power to create such a Board and to confer upon it these powers.

But it is said that sections 2, 3 and 4 of the Act, providing for a subdivision of the precincts into different polls, violate Article 13 of the Constitution, which declares that " no person shall be entitled to vote at any election held in this State, except in the parish of his residence, and, in cities and towns divided into election precincts, in the election precinct in which he resides."

It is the Constitution which restricts the right of the voter, not the law. He cannot vote out of the election precinct in which he resides. He may vote within it. Counsel argue that he may vote anywhere within it. If so, he would have the right to demand that the ballot-box be brought to his house. But the Constitution has secured him no such right. He may vote in his precinct, if he chooses to go to the poll which the advertisements published by authority tell him is the place where his ballot will be received. There is no unconstitutionality in

39

having more than one poll in such precinct, and in warning registered voters that names beginning with certain letters will be received at one poll, and those beginning with different letters at another only. It is a provision to facilitate and not to restrict the right of suffrage, and is well calculated to avert the danger of mobs, riots and disorders.

The provision in sections 9 and 32, that the city of New Orleans and the Police Jury of the Right Bank shall pay proportionally the salary of $500 each to the two members of the Central Board of Commissioners appointed from among the citizens of New Orleans, and the office expenses of the Board not exceeding $1000, can, in no event, vitiate the organization of the Board or taint the Act with nullity.

Nor can the provision in section 14, that the Board is authorized to use as an election poll " any building belonging to the city of New Orleans or parish of Orleans, *or*, if necessary, rent proper buildings for the occasion," have the effect of destroying the law.

The Act is entitled " An Act relative to elections in the parish of Orleans," and all its provisions seem to relate to that general subject. It is not, therefore, null by reason of the 115th Article of the Constitution.

For the purpose of reaching a conclusion upon the merits of this cause, these are all the constitutional questions which I find it material to notice. There are others urged against other sections of the law which I will consider when a proper case arises. For I find that the first fifteen and the last two sections of the Act taken together may well stand as the law regulating elections in the parish of Orleans, even if every other section were declared null and void. All the other sections concern only the Superintendent of Elections and his deputies, and the preservation of order on election days, constituting what may well be called the " police portion " of the bill. The portion composed of the first fifteen and last two sections is entire and distinct from the other sections, and may therefore, under a well settled rule of construction, subsist without the police portion. That part of the law which is complete in itself and constitutional, would not be affected even if all the rest were unconstitutional. *Campbell* v. *Union Bank*, 6 How. Miss. 625. If an independent provision, not in its nature and connection essential to the other parts of the statute, be unconstitutional, it may be treated as a nullity, leaving the rest of the enactment to stand as valid. *Exchange Bank* v. *Hinds*, 3 Ohio (N. S.) 1. See also *Ely* v. *Thompson*, 3 A. K. Marshall, 70 ; *Fisher* v. *McGin*, 1 Gray, 1 ; *Bank of Hamilton* v. *Dudley*, 2 Pet. 492, 526 ; *State* v. *Allen*, 2 McCord, 55 ; *Clark* v. *Ellis*, 2 Black, 8 ; *Steel* v. *State*, 5 Black, 110 ; *Yarmouth* v. *North Yarmouth*, 34 Maine, 411.

Holding these views, it is unnecessary for me now to express an opinion upon the police portion of the election law.

The present election was, therefore, in my opinion, held under a law which was valid so far as it provided for the precincts, the polls, and the mode of appointing Commissioners of Election. Those Commissioners receiving their appointment from the Central Board of Commissioners for the parish of Orleans, a legally organized Board, had power to receive and count the votes, and their returns were by consequence official. If that Board had not a legal existence under the Constitution, it would follow that there were no Commissioners of Election, and the returns of persons acting without any legal authority, would be utterly worthless. It would be as if a voluntary election had been held by private persons, which would amount to nothing before the law.

II. The appellant urges that there could be no valid election for a Justice of the Peace on the same day with other elections, because a Justice of the Peace is a Judge, and by Article 82 of the Constitution it is made " the duty of the Legislature to fix the time for holding elections of all Judges at a time which shall be different from that fixed for all other elections."

But I am of the opinion that Article 78, which declares that Justices of the Peace " shall be elected by the qualified electors of each parish, district or ward, for the term of two years *in such manner,* and shall have such criminal jurisdiction *as shall be provided by law,*" controls this subject, and leaves it optional with the Legislature to fix the time of election, even on the same day with other elections.

III. But it is contended that no law had been passed fixing the time or manner of an election for Justices of the Peace in New Orleans; so that the election was without warrant of law. The Act of March 15th, 1855, (p. 497,) " relative to the Justices of the Peace for the parish of Orleans," provided for the election of seven Justices of the Peace " at every *general election* for Clerks of the District Courts in the parish of Orleans." The elections under this Act began at the time of an election for Clerks of the District Courts. They hold their offices for four years, Justices of the Peace for two. This Act, which is most carelessly worded, should, I think, be interpreted to mean that Justices of the Peace, in this parish, shall be elected at every general election, which occurs once in two years. It is the only way to harmonize the law and the Constitution.

IV. Finally, the plaintiff contends that his term of office had not expired. But he held " in the place of *Richardson,* deceased." If *Richardson* had lived, his term would have expired at the period of the election in contest; and so, I think, did the plaintiff's.

Thus, although by a differnnt route, I have reached the conclusion of my colleagues, that the judgment appealed from should be affirmed.