On Rehearing.
BREAUX, C. J.
The acquisition of a site for and the construction and maintenance of a courthouse building in the. city of New Orleans was the purpose of the legislation of 1902 and 1904. Act No. 79, p. 106, of 1902, Act No. 96, p. 214, of 1904, and Act No. 179, p. 369, of 1904, are assailed by plaintiffs, taxpayers, on the ground of unconstitutionality.
There remains for consideration and decision two of plaintiff’s grounds of attack. The other grounds have passed out of the discussion by reason of the fact that they were decided adversely to plaintiff’s contention, and on the rehearing the correctness of the court’s decision has not been in any respect questioned.
The remaining grounds for decision are:
First. Whether the legislation was local and special, and falls within the meaning of article 50 of the Constitution.
Second. Whether the statutes under which, the commission known as the “Courthouse Commission” holds its authority were illegal and repugnant to articles 319 and 320 of the Constitution.
We return to the first inquiry. This court, prior to the Constitution of 1898, held that, a statute, though partly local, may be public in its effects.
Our jurisprudence has interpreted the laws, upon the subject. They sustain the view that the statutes attacked are not local and special. .
The state has exercised the authority to-direct that courthouses shall be provided. It is a public question. The Constitution of 1898 (article' 88) lays it down as a mandate that the General Assembly shall make the “necessary appropriation to provide suitable- and commodious buildings for said court and the records thereof, and for the care and maintenance of a State Library therein.’”
These two laws take the statutes in question out of the category of “local and special laws.” They were adopted to the end of carrying out the legislative intent expressed in the act of 1880 and the constitutional mandate of a comparatively recent date.
The courthouse is to be a public building. That part to be occupied by the Supreme-Court (and offices mentioned in the statute) and a public library is for a general purpose. This court laid down the rule of interpretation in the case of State of Louisiana v. Emile Dalon, 35 La. Ann. 1141:
“The real distinction between general and: public laws and local or special laws is that the former affect the community as a whole, whether throughout the state or one of Us subdivisions, and the latter affect private persons, private property, private and local private interests.” Italics ours.
*344 All the decisions upon the subject prior to the Constitution of 1898 are to the same effect and sustain a similar view. Taxpayers’ Association v. New Orleans, 33 La. Ann. 567; Davidson v. Tax Collector, 35 La. Ann.. 492; Fisher v. Auditor, 39 La. Ann. 447, 1 South. 882; Excelsior Planting & Mfg. Co. v. Green, 39 La. Ann. 455,1 South. 873; State v. Judge, 39 La. Ann. 889, 2 South. 786; State v. Beeder, 44 La. Ann. 1007, 11 South. 816; State v. Murray, 47 La. Ann. 1424, 17 South. 832.
The line of precedents prior to the Constitution of 1898 is unbroken, consistent, and harmonious.
The long line of authorities is sustained by decisions in other states.
In People v. Supervisors of Chautauqua, 43 N. Y. 17, the court said:
“An act is local, within the meaning of the Constitution, which in its subject relates to but a portion of the people of a state or to their property, and may not, either in its subject, operation, or importance and necessary results, affect the people of the state or their property in general.”
Here, as in the cited case supra, the subject, operation, or importance affects the whole state.
In another case the court said, referring to a similar subject: •
“These are to be regarded as public acts which regulate the general interests of the state or any of its subdivisions.” Inhabitants of New Portland v. Inhabitants of New Vineyard, 16 Me. 69.
The least that can be said is that the improvements in question relate to “one of the subdivisions” of the state.
A high school in another state was considered public, and not “local” and “special”; that is, the court decided that the legislation regarding a high school was not an interference with local government. The power of the Legislature commanded some recognition. State v. Freeman (Kan.) 58 Pac. 959, 47 L. R. A. 67.
No one denies the importance of schools, or should in the least seek to lessen their importance. If the Legislature, however, can impose the obligation of building a schoolhouse (a proposition we do not have to approve), surely the Legislature has the authority and power to compel a municipality to build a courthouse. The Legislature has the further authority and power to join the municipality in order to build a courthouse that will enable it to carry an article of the Constitution into effect, and at the same time build a courthouse sufficiently large for the state and the city.
We return for a moment to the decisions of this court first above cited. We cited only decisions of this court that preceded in date the Constitution of 1898, for the reason that it is a well-known principle of construction that a law, if re-enacted, embraces in effect the interpretation placed upon it prior to its re-enactment.
Articles 48 and 50 of the Constitution of 1898 are substantially similar to articles 48 and 50 of the Constitution of 1879.
The rule of interpretation in the decision of this court first above cited is too thoroughly imbedded in our jurisprudence to be disturbed:
“When decisions fully interpret a statute, and the statute is re-enacted, it embodies the interpretation; i. e., the statute is re-enacted as interpreted.” Black, Const, p. 337; Sutherland, St. Const, p. 393.
The decisions of this court rendered after the Constitution of 1898 had been adopted followed the old decisions before referred to on the subject.
The accepted meaning of the Constitution for so many years should remain undisturbed, in so far, at least, as past acts are concerned. If not, there will be changes and confusion in many places.
Legislation has followed the interpretation of this court, regarding notice required by articles 48 and 50.
The construction placed upon those articles under the Constitution of 1879 was the con *345 temporaneous exposition of the court, as to which Marshall, O. J., has well said:
“Great weight has always been attached, and very correctly attached, to contemporaneous exposition.”
Again we quote from Lieber’s Hermeneutics:
“It becomes necessary that doubtful points, springing from a new state of things, should be considered settled until a weighty reason induces us to deviate from the settled decisions.”
If this was a doubtful point when the Constitution of 1879 became the organic law, it should now be considered settled.
It is the law.
This brings us to a consideration of the second ground of objection, viz., the asserted violation of articles 319 and 320 of the Constitution. This objection of plaintiffs is grounded on the hypothesis that the statutes attacked are an infringement on the city’s right to local self-government.
To the city was granted police power and power of administration, and this she has. If this power extends further, it does not extend so as to exclude the state from carrying out the project here involved.
One of the articles of the Constitution (article 319) referred to reads:
“The electors of the city of New Orleans, and of any political corporation which may be established within the territory now or which may hereafter be embraced within the corporate limits of said city, shall have the right to choose the public officers who shall be charged with the exercise of the public power and with the administration of the affairs of said corporation, in whole or in part.”
The contention is that the method of appointment as laid down in the statute attacked takes from the city her right to choose her own officers. We are not of the opinion that the statutes interfere with the city’s right in this respect.
The state seeks to put a constitutional mandate into execution by instrumentalities of her own selection. This she can do if the purpose is not to interfere with the police or administrative powers, or any other power the city has.
In what respect is the police or administrative power interfered with? Building a courthouse has nothing to do with the appointment of commissioners as instrumentalities to carry out its purpose — does not take from the city her right to choose her officers.
Eor the sake of illustration, let us for a few minutes leave New Orleans, its government, and its varied commercial interests, and imagine that a small new city has just been incorporated under a charter conferring police and administrative powers, and to it the usual powers of local government. In the course of time the General Assembly, desiring to comply with an article of the Constitution, deems proper to locate a courthouse and public library in this city. A law is passed making ample provision to that end, and as the new city is to be benefited in many ways, incidentally, the lawmaking power renders it possible for the city to pay for a goodly portion of the building. As these improvements do not fall within the police or administrative department of the city, they can be erected without violating the city’s rights of local government, enjoyed to the extent before mentioned, and the state can appoint her instrumentalities to carry out her own purposes.
Returning to the city of New Orleans: The state owns- lands within her limits; i. e., she did own lands within her limits. But, owing to her good will, it may be that in time these lands have passed out of the ownership of the state into that of the city. The state, as is sometimes the case with the well-disposed paterfamilias toward a favored member of the family, has allowed to the municipality the use of the property until the favored member assumes that he is the real owner.
If the state, under constitutional direction, were to have a courthouse and library built on one of her own lots of ground within the *346 city’s limits, there could he no objection, even though in so doing the less important political subdivision — that is, the city — were admitted to the occupancy of part of the building.
If the state, in order to carry out the provisions of a still higher authority, the Constitution, appoints an instrumentality of her own to attend to the interests of both the city and the state in putting up a building, could it be considered unfair, illegal, or unconstitutional, in so far as the city is concerned?
The board of commissioners appointed by the state and city to represent both state and city, in building that courthouse are not officers in the senfce prohibited by the Constitution, and therefore can act in carrying out the terms of the statutes.
There are decisions directly in point in other jurisdictions, as well as in our own. Among them are the following:
“Civil officers,” as used in the organic law creating the territory of Wisconsin, “embrace only those officers in whom the portion of the sovereignty is vested and in whom the enforcement of the municipal regulations or the control of the general interests of society is confided. It is not such officers as canal commissioners.” U. S. v. Hatch, 1 Pin. 182; 2 Burns, § 21; Abbot’s Law Dictionary.
But, conceding that they are officers, they do not interfere with local police or with the administration of the city. State v. Flower, 49 La. Ann. 1199, 22 South. 623.
This court said, in the Police Board Case (State v. City, 41 La. Ann. 171, 6 South. 598):
“The object of the constitutional provisions was to confer upon the citizens of New Orleans absolute control of their government in the exclusive choice of officers necessary for its administration.” .
We abbreviate the following from a number of well-considered decisions regarding officers and the right to appoint commissioners.
First. Commissioners to make a survey are not officers. U. S. v. Hatch, 1 Pin. 182.
Second. Neither are canal commissioners. Butler v. Regent, 32 Wis. 124.
Third. Nor commissioners to superintend the erection of a statehouse. U. S. v. Hatch, 1 Pin. 182.
Fourth. Nor to fund a city debt. Bunn v. People, 45 Ill. 397.
Fifth. Nor to liquidate a financial institution. People v. Middleton, 28 Cal. 603; Andrews v. Saucier, 13 La. Ann. 301; Conrey v. Copland, 4 La. Ann. 307.
The last two are in point, and should have special weight, for they are decisions of our own court.
Again, if these commissioners are officers, they are officers of the state, and not of the municipality, and the article of the Constitution has no effect as to them.
We leave this ground, convinced that the state may carry out one of its statutes through her own instrumentality within city limits.
The right of the city to control her own funds' has given rise to discussion in the pending case. The city cannot very well be placed in the attitude of objecting to the appropriation for the building of a courthouse. She should not be made to defend against her will.
She is not opposed to the appropriation; on the contrary, she has complied with the terms of the statute. She has, without objection on'the part of any one, made provision in her budget for paying the amount required.
The suit was brought in the name, of taxpayers whose interests cannot be affected to any extent.
If we concede that a statute generally accepted and executed can be set aside on the petition of a.few taxpayers, then the question arises, does the exercise of the power under the statute attacked interfere with her local government, her police power, or with her power of administration, or with the funds needful to carry out these powers?
We think not, and we have not heard any one say that it does.
But the contention is that the municipality *347 has an almost exclusive power of local government, with very little, if any, limitation.
With that contention we cannot agree.
The General Assembly has always exercised the authority of directing the city to disburse certain funds for particular purposes, and on this point it is noteworthy that the-salary of the executive officers of the city is fixed by the General Assembly.
The city, under Act No. 170, p. 346, of 1898, appropriates a round sum of the city’s money to defray expenses of the tax assessing department. The limit of the salaries of certain executive officers and other appropriations by the city are made under the expressed legislative will.
The city, under legislative direction, sets aside a part of its revenues for permanent public improvements.
The courthouse to the extent that the city is concerned is a local improvement.
The contention at this point is that these appropriations to which we have just referred are made under amendment to the city charter.
That may be. But the statute attacked also amends the charter. It is not subject to the objection that it is not an amendment. It cannot be successfully contended that the two statutes are not amending statutes of the charter.
A definition will serve to illustrate.
A charter is defined as an act of a legislative body creating a municipality or other corporation, and defining its power and privileges.
The statute here in part defines the power and privilege of the city of New Orleans. It adds to the provisions of her charter. It is an authoritative grant of power, of which she has availed herself to provide a suitable courthouse.
In conclusion, we will say that the state by the plan adopted complied with article 88 of the Constitution, and the city complied with a legal statute.
We have treated the statute as mandatory. There is no limitation on the city’s right to build a courthouse. She can build it without a statute on the subject.
The statute here may be considered as at least authoritative in so far as the city acts conjointly with the state.
In accepting the authority and acting under it; she has violated no part of the organic law.
Whether mandatory or authoritative only, the statutes are legal.
The proposed improvement will be a joint work. The project has already been partly executed. It should not be cut down midway in its course to completion.
There is no suggestion of an amount improperly expended in the progress of the work, or of want of intelligence shown in any way.
The grounds for destroying this project should be very manifest.
The statutes attacked cannot be destroyed without overturning and setting aside a number of well-considered decisions, nearly all preceding in date the Constitution of 1898.
For reasons assigned, the judgment of the district court, heretofore decreed null by the first decision of this court, is reinstated, and now it is ordered and decreed that said judgment of the district court is in all respects affirmed and made the judgment of this court.